IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRISTINA A. ARGYROPOULOS,

Plaintiff,

v.

CITY OF ALTON, an Illinois Municipal
Corporation; STEVEN DUTY, individually;
CHRIS SULLIVAN, individually; and
TIM BOTTERBUSH, individually,

Defendants.                                         No. 03-810-DRH

## MEMORANDUM AND ORDER

HERNDON, District Judge:

### I. Introduction

Now before the Court is a motion for summary judgment as to Plaintiff's second amended complaint filed on behalf of all Defendants. (Doc. 79.) Plaintiff Christina Argyropoulos responds in opposition. (Doc. 94.) For the reasons set out below, the Court grants Defendants' motion for summary judgment and dismisses the case with prejudice.

### II. Background

Plaintiff, a former employee of the Alton Police Department, alleges in her second amended complaint (Doc. 35) that she was sexually harassed by co-workers and supervisors, and terminated, as retaliation, for filing a sexual harassment complaint. Plaintiff also alleges that she was denied due process when she was

1

terminated without a hearing. Lastly, Plaintiff claims that the alleged harassment amounts to intentional infliction of emotional distress.

The City hired Plaintiff on July 1, 2002 as a jailor at the Alton Police Department. (Doc. 35, ¶ 9.) At the time Plaintiff was hired, she was given a copy of the City of Alton's Racial and Sexual Harassment Policy. (Doc. 93, p. 3.) Additionally, as a civilian employee of the City, she was a member of the American Federation of State, County and Municipal Employees (AFSCME). (*Id*., p. 2.)

Initially, Plaintiff was assigned to work with Defendant Steven Duty. (*Id*., p. 3.) Eventually, Captain Lane separated the two for their failure to get along with each other. (*Id*.) Plaintiff alleges that Duty and other co-workers and supervisors subjected her to a continuing pattern of sexual harassment and gender discrimination. (Doc. 35, ¶ 16.) Plaintiff states in her amended complaint that she complained about the alleged sexual harassment to her superiors, but no remedial or appropriate actions were taken. (Doc. 35, ¶¶ 18-20.) On November 27, 2002, Plaintiff received a performance evaluation completed by Lieutenant Waldrup stating that she needed improvement in several areas including employee contacts, job skill level, volume/acceptable work, meeting deadlines, and effectiveness under stress. (Doc. 93, p. 3.)

On March 13, 2003, Plaintiff filed a written sexual harassment complaint. (Doc. 94, p. 7.) Plaintiff completed a report entitled "Sexual Harassment" and recorded two incidents which involved Duty. The first incident Plaintiff alleged occurred in November of 2002 and involved several comments that Duty made to

Plaintiff during an argument about a prisoner's condition. During this argument, Duty allegedly cursed several times at Plaintiff and stated, "Maybe you just can't concentrate because you're not getting your freak on. . .maybe if you weren't so appropriate, you'd find somebody to get your freak on with." (Doc. 80-5, p. 1.) The second incident occurred on March 9, 2003. Plaintiff alleges that Duty moved her jacket back with the back of his hand, pointed to a wet spot on her blouse, and stated, "What's that on your tit?" (Doc. 80-5, p. 2.) These were the only two incidents noted in the formal written complaint. Chief Sullivan initiated an investigation into the complaint. Plaintiff complained to Sergeant Pruitt about at least one other incident outside of work that allegedly involved Duty. (Doc. 94, p. 7.) In addition, Plaintiff's amended complaint contains other allegations of sexual harassment. (Doc. 35, ¶ 16.) Plaintiff alleges that she felt hostility around the workplace after she filed her complaint and that her workload increased. (Doc. 94, p. 10.)

On April 28, 2003, Plaintiff met with Alton Police Department Captain Terry Lane and Lieutenant Al Adams, her immediate supervisor. Defendants contend that this meeting was scheduled to discuss problems with Plaintiff's work performance. (Doc. 93, p. 5.) Plaintiff states in her complaint that she initially believed that the meeting was scheduled to address Plaintiff's complaints of sexual harassment. (Doc. 35, p. 9.) At the conclusion of the meeting, Plaintiff signed a brief statement that acknowledged that the captain had reviewed her work performance and discipline issues with her, and she also acknowledged in writing that she was given an opportunity to ask questions and to have any issue clarified. (Doc. 93, p. 5.)

Plaintiff maintains that during the meeting Adams and Lane subjected her to extreme and outrageous conduct, which included shouting, screaming, and threatening conduct. (Doc. 35, p. 9.) Plaintiff further alleges that she had a reasonable belief that Lane and Adams had or were about to commit a crime, and therefore she activated a recording device and recorded a portion of the meeting. (*Id.*, p. 10.) After being informed of this act, Sergeant Botterbush prepared a report and referred the matter to the detective division for investigation. Plaintiff was subsequently arrested on felony eavesdropping charges. (Doc. 93, p. 5.)

On or about April 30, 2003, Chief Sullivan terminated Plaintiff, allegedly based on the felony eavesdropping charges. (*Id.*) Plaintiff was provided with a letter explaining the reasons for her termination and advised to speak with David Miles, Director of Personnel for the City. Plaintiff went to the Equal Employment Opportunity Commission ("EEOC") instead of filing a grievance or requesting a hearing before the Civil Service Commission of Alton. (*Id.*) The first document she filed with the EEOC was dated May 9, 2003. Plaintiff received a Notice of Right to Sue dated September 2, 2003 from the EEOC and Plaintiff filed her initial complaint on December 1, 2003.

Defendants filed a motion for summary judgment on arguing that the statements made to Plaintiff were not gender related, that she was terminated as a jailor for legitimate reasons, that Plaintiff's arguments regarding her constitutional rights are without merit, and that none of the incidents cited are of the type to sustain a finding of IIED. (Doc. 79.) Plaintiff filed a response on March 1, 2006. (Doc. 94.)

### III. Legal Standard for Summary Judgment

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Oats v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1124 (N.D. Ill. 1995) (Castillo, J.). The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in his pleadings. Rather, she must show through specific evidence that an issue of fact remains on matters for which she bears the burden of proof at trial. *Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994), *aff'd*, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return

a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." ***Anderson*, 477 U.S. at 249-50** (citations omitted); *accord* ***Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996)**; ***Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994)**. "[Nonmovant's] own uncorroborated testimony is insufficient to defeat a motion for summary judgment." ***Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 939 (7th Cir. 1997)**. Further, the non-moving party's own subjective belief does not create a genuine issue of material fact. ***Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997)**. However, when all the Court has before it are the diametrically opposed statements of the parties on the critical and ultimate issues of fact, the Court, not in a position to make credibility findings, must pass the case to the next phase of litigation.

### IV. Analysis

**A.    Count I: Sexual Harassment Claim**

Plaintiff claims that Defendant Alton violated Title VII of the Civil Rights Act of 1964, as amended, **42 U.S.C. §2000(e), *et seq.*** because Plaintiff alleges that she was subjected to a continuing pattern of sexual harassment, gender discrimination, and derogatory conduct in the workplace. Defendants argue that even when construing the allegations in the light most favorable to Plaintiff, the alleged incidents do not support a claim of a hostile work environment based on Plaintiff's sex.

To prevail on a claim of sexual harassment based on a hostile work environment, a plaintiff must establish that: "(1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on sex; (3) the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the plaintiff; and (4) there is a basis for employer liability." **Valentine v. City of Chicago, 452 F.3d 670, 677 (7th Cir. 2006) *citing Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1032 (7th Cir. 1998).**

To qualify as "hostile," the work environment must be "both objectively and subjectively offensive." **Rhodes v. Illinois Dep't of Transp., 359 F.3d 498, 505 (7th Cir. 2004)**. In determining whether particular conduct constitutes an actionable hostile work environment, a court should consider the totality of the circumstances, including both the subjective and objective viewpoint. **Quantock v. Shared Marketing Servs., 312 F.3d 899, 903 (7th Cir. 2002)**. Factors include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. **Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993)**.

Furthermore, a plaintiff must establish that the harassment was based

7

on the plaintiff's protected status. **Valentine, 452 F.3d at 680.** Harassment need not be motivated by sexual desire, *see* **Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)**, but aggravating or rude behavior, taken alone, is not enough to demonstrate a hostile work environment claim. **Id.** In addition, the Supreme Court has cautioned, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" **Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).**

A plaintiff must also establish that the conduct was either severe or pervasive. The Seventh Circuit has held that "one extremely serious act of harassment could rise to an actionable level as could a series of less severe acts." ***Haugerud v. Amery School Dist.*, 259 F.3d 678, 693 (7th Cir. 2001)**. It is difficult to establish exactly where the line gets drawn, but in this Circuit, plaintiffs have a high hurdle to clear. In ***Baskerville v. Culligan International Co.*, 50 F.3d 428, 430 (7th Cir. 1995)**, the Court stated that while the "concept of sexual harassment is designed to protect women from the kind of male attentions that can make the workplace hellish for women. . . . It is not designed to purge the workplace of vulgarity." For example, in ***Baskerville***, the Seventh Circuit held that calling plaintiff "pretty girl"; grunting when she wore a leather skirt; suggesting she heated up his office; telling her that a P.A. system "attention" announcement meant that "All pretty girls run around naked"; implying that "pretty girls" at the office might make

him "lose control"; insinuating that she and he had been "dancing, like in a night club"; and mentioning that it was lonely in his hotel and stating, with a gesture suggesting masturbation, that all he had for company was a pillow was not actionable sexual harassment. ***Baskerville*, 50 F.3d at 430.**

      Defendants contend that neither of the comments that Plaintiff reported in her sexual harassment complaint were directed at her because of her sex. Instead, Defendants argue that the comments were directed at Plaintiff because of her poor work performance. The Court is inclined to agree. Although Defendant Steven Duty was certainly hostile to Plaintiff, it does not appear that Duty's hostility was directed toward Plaintiff because she is a woman. Rather, from the record before the Court, it appears that Duty was rude and hostile towards Plaintiff because he did not like her. This certainly does not excuse Duty's behavior. There is simply no excuse for this type of behavior in the workplace; however, rude or offensive conduct alone, without evidence that the conduct was directed towards Plaintiff because she is a woman, is not enough to sustain a hostile work environment claim.

      However, even assuming for the sake of argument that Duty was hostile towards Plaintiff *because* she is woman, the two incidents reported in Plaintiff's sexual harassment complaint still fail to demonstrate that the harassment was either severe or pervasive. Plaintiff reported two incidents that occurred over the several months that she worked with Duty. In Plaintiff's second amended complaint, Plaintiff alleges several other incidents involving other co-workers and a supervisor, including: a comment made by Duty to Plaintiff that she would be better at her job if she "got

9

laid more"; a comment by Officer Espinoza to Plaintiff that because she was Greek "that must mean you like to take it in the ass"; several occasions when Officer Wetzstein would remove Plaintiff's hairclips as she was getting ready for her shift; multiple comments made by unnamed co-workers to Plaintiff that were sexually harassing and/or threatening about Plaintiff's two daughters; multiple occasions when Defendant Botterbush would disable Plaintiff's key and then mock Plaintiff over the intercom system; and several occasions when co-workers would post hand-drawn cartoons or photos around the workplace that sexually threatened, demeaned, or humiliated Plaintiff.  Plaintiff claims that all of these incidents, including the two reported incidents involving Duty, were offensive to her.  The Court, however, has a difficult time understanding if Plaintiff considered these other incidents to be so offensive, why Plaintiff did not include the other incidents in her sexual harassment report.  Plaintiff's failure to report these other incidents undermines her argument that she considered the non-reported conduct offensive, and hence, it seems questionable whether even Plaintiff objectively considered the incidents, outside of Duty, to be offensive. Furthermore, to establish a hostile working environment claim, Plaintiff must also demonstrate that the conduct would be offensive to a reasonable person. Considering all of the incidents, the Court does not believe that a reasonable person would find the conduct constituted a hostile working environment.  Plaintiff has failed to establish that the alleged conduct was based on her sex or that it was either severe or pervasive enough to establish that the conduct created a hostile work environment on the basis of gender discrimination.  Because Plaintiff's claim fails on

these two prongs, the Court need not consider the employer's liability.

**B. Count II: Retaliation Claim**

If a plaintiff offers indirect evidence of retaliation, the ***McDonnell Douglas*** burden-shifting approach applies. ***Haywood v. Lucent Techs.*, 323 F.3d 524, 531 (7th Cir. 2003)**. Under this approach, a plaintiff must first establish a prima facie case of retaliation. The defendant, then, must advance a legitimate, nondiscriminatory reason for the adverse employment action, and the plaintiff must follow by showing that the defendant's proffered reason is pretextual. ***Id.***

In order to prove a prima facie case of retaliation, the plaintiff must demonstrate that "(1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." ***Id***. In order to survive a motion for summary judgment, a plaintiff must establish that there is genuine dispute over whether the proffered explanation is merely pretext by showing that "1) it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason or 2) that an employer's explanation is not credible." ***Hudson v. Chicago Transit. Auth.*, 375 F.3d 552, 561 (7th Cir. 2004).**

As discussed above, Plaintiff tape recorded a meeting between herself, Captain Lane, and Lieutenant Adams on April 28, 2003. After Sergeant Botterbush

discovered this, he ordered an investigation. On April 30, 2003, members of the Alton Police Department went to Plaintiff's home, served her with a search warrant, searched her home, obtained a tape cassette from Plaintiff's vehicle, arrested Plaintiff, and booked her on charges of eavesdropping. In a letter dated April 30, 2003, Chief Sullivan terminated Plaintiff. The reasons given for Plaintiff's termination were her overall job performance, the alleged criminal conduct which formed the basis of the felony charges, and the untruthful statements Plaintiff made during the investigation of Plaintiff's alleged criminal conduct.

It is unclear from the record whether Plaintiff even satisfies her prima facie case. On March 13, 2003, Plaintiff filed a formal sexual harassment complaint and on April 30, 2003, she was terminated. But Plaintiff has not provided evidence that she was performing her job satisfactorily or that she was treated any differently than someone who had not filed a sexual harassment complaint. Plaintiff concedes that there were concerns about her job performance, but she also suggests that the write-ups that she received following her complaint are indirect evidence of retaliation.

Defendants maintain that Plaintiff was terminated for legitimate, non-discriminatory, non-retaliatory reasons, which included Plaintiff's poor work performance and her alleged criminal conduct. Plaintiff contends that she was not engaging in criminal conduct when she tape recorded her meeting with her supervisors. Rather, Plaintiff argues that her conduct was protected because it falls within an exception to the Illinois Eavesdropping law, which provides that recording

12

a conversation may be allowed if a party has a reasonable suspicion that another party to the conversation has, will, or is committing a crime. **720 ILCS 5/14-3.** Plaintiff has alleged that she recorded the conversation because she believed that Defendants were about to violate Title VII. However, a Title VII violation amounts to a civil offense <u>not</u> a crime. Therefore, the exception does not apply.

The Seventh Circuit has held that "an employee's complaint of harassment does not immunize her from being subsequently disciplined or terminated for inappropriate workplace behavior." *Hall,* **276 F.3d at 359**. Clearly, Defendants have proffered a legitimate reason for terminating Plaintiff. The record supports Defendants' explanation that Plaintiff's work performance was not satisfactory. Plaintiff's evaluation in November, 2002 noted several deficiencies and Plaintiff had been written up for other problems with her work. More importantly, Plaintiff had engaged in conduct, in the workplace, that led to her being arrested and charged with a felony. Plaintiff has failed to establish that Defendants' explanation is merely pretext. The Court finds that Defendants terminated Plaintiff for a legitimate reason and not out of retaliation.

**C.    Counts III and IV: Due Process Claims**

In Count III of Plaintiff's second amended complaint, Plaintiff alleges that Defendant Alton deprived her of her due process rights when it terminated her employment without giving her a meaningful opportunity to be heard. Plaintiff makes the same claim in Count IV as to Defendants Sullivan and Botterbush in their

individual capacities. In Plaintiff's response to Defendant's motion for summary judgment, Plaintiff also mentions Defendant Duty; however, Plaintiff did not name Duty in Count IV of her second amended complaint, so the Court will not consider Duty a named-party to Count IV. Furthermore, before even proceeding with the analysis below, the Court dismisses the claim against Defendant Botterbush. Plaintiff has not provided any facts in this record that would suggest that Defendant Botterbush terminated or had the authority to terminate Plaintiff. Likewise, without the authority to terminate Plaintiff, Defendant Botterbush cannot be held liable for any due process deprivations relating to Plaintiff's termination.

To establish a due process violation, an individual must assert that she has been deprived of either a protected liberty or property interest. To determine what process is constitutionally due, three factors should be considered: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used; and (3) the Government's interest. **Gilbert v. Homar, 520 U.S. 924, 931-932 (1997).** Courts have consistently held that due process is a "flexible" concept that requires careful consideration of the particular situation to determine what process is due. **Morrisey v. Brewer, 408 U.S. 471, 481 (1972).** In the present case, the Court need not weigh the interests at hand because the Court believes that Defendants afforded Plaintiff an opportunity to be heard, albeit after her termination, but Plaintiff waived her right to a hearing by failing to ever request a hearing before the Civil Service

14

Commission or arbitration through her union.

In Plaintiff's second amended complaint, Plaintiff does not plead that she has been deprived of any liberty interest. Instead, Plaintiff alleges that as a municipal employee, her employment was a property interest protected by the Fourteenth Amendment. Furthermore, Plaintiff claims that the Illinois Municipal Code **65 ILCS 5/10-1-18(b)** mandates minimal due process requirements for municipal employees, like Plaintiff, who are discharged. Section 18(b) provides that "[n]o officer or employee of a police or fire department in the classified civil service of any municipality...may be removed or discharged...except for cause upon written charges and after an opportunity to be heard in his own defense....unless the employer and the labor organization representing the person have negotiated an alternative or supplemental form of due process based upon impartial arbitration as a term of a collective bargaining agreement."

As a member of AFSCME, Plaintiff was covered by both the City of Alton's union contract with AFSCME and the City's Civil Service Rules. Section 12.04 of the Civil Service Rules provides that employees under union contract with the City have the right to elect to have a discharge heard by the Civil Service Commission or to follow the union's grievance procedures. Under Section 12.04, if an employee wishes to proceed with the Commission, they must request a hearing within 4 days of receiving the notice of discharge, otherwise the Commission will take no further action. Plaintiff did not request a hearing before the Commission nor did she elect

15

to initiate grievance procedures pursuant to the AFSCME contract. Instead, as Defendant points out, Plaintiff filed a complaint with the EEOC. Plaintiff now complains that she was deprived of an opportunity to be heard. Upon reviewing the record, the Court does find it regrettable that the City of Alton does not provide more explicit notice to employees of their right to a hearing before the Civil Service Commission. However, the Court agrees with Defendant that Plaintiff was well-informed of who her union representative was and how to contact him regarding problems. Plaintiff had a full opportunity to be heard following her discharge and, therefore, neither the City nor the individually-named Defendants deprived Plaintiff of a post-termination hearing.

The question then becomes whether Plaintiff should have been given an opportunity to be heard prior to her termination. The United States Supreme Court has held that "where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." ***Gilbert*, 520 U.S. at 930.** The purpose of the pre-termination process is to determine if the alleged charges against an employee are true and it is also meant to prevent an erroneous decision. ***Gilbert,* 520 U.S. 931.** However, the Court in *Gilbert* found that an arrest of an employee alleviates the risk of an erroneous decision of the employer because it provides reasonable grounds to believe that the charges are true. ***Id.*** In our case, Plaintiff's misconduct was investigated by the Alton Police Department and she was subsequently arrested and

16

charged with a felony. Defendants had an interest in addressing Plaintiff's misconduct quickly, particularly given the nature of her work. Additionally, the Seventh Circuit has held that a post-deprivation grievance procedure contained in a collective bargaining agreement, as in the present case, can satisfy due process even where an employee has been discharged. **Buttitta v. Chicago, 9 F.3d 1198 (7th Cir. 1993).** In sum, Plaintiff has failed to establish any due process violations.

### D.     Count V: Intentional Infliction of Emotional Distress Claim

Plaintiff's final claim is a state tort claim of intentional infliction of emotional distress ("IIED") filed against Defendants Duty and Botterbush, in their individual capacities. Under the law of Illinois, to prevail on a claim of IIED, a plaintiff must demonstrate that (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant intended that his conduct inflict severe emotional distress, or knew or should have known that there was a high probability that his conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. **McGrath v. Fahey, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (Ill. 1988).** For a plaintiff to recover he must show that a "recitation of the facts to an average member of the community would arouse resentment against the actor and lead him to exclaim: 'Outrageous!' " **Doe v. Calumet City, 161 Ill. 2d 374, 392 (Ill. 1994).** The tort does not cover "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." **McGrath, 126 Ill. 2d at 86., quoting**

***Restatement (Second) of Torts* § 46, comment d, at 73 (1965).** In determining whether certain conduct is sufficiently outrageous to support an IIED claim, the Illinois Supreme Court has directed that one factor courts should consider is the level of power or authority that the defendant has over the plaintiff. ***Id.* at 86-87.**

As to the allegations against Duty, Plaintiff has alleged only a handful of incidents specifically involving Duty, which occurred over several months. Plaintiff has not suggested that Duty had any power or authority over her. Duty was merely a co-worker. Although Duty's conduct was rude, despicable, and inappropriate, it was not so extreme or outrageous to support a claim of IIED.

Defendant Botterbush, on the other hand, was one of Plaintiff's supervisors. He was potentially in a position to exploit his power over Plaintiff. However, the allegations against Botterbush - that he made comments about Plaintiff using a restroom outside of her work area and that he locked Plaintiff in an area between the cell blocks and the booking area - even if true, also fail to sustain an IIED claim. There is no evidence that Botterbush was using his power to threaten or intimidate Plaintiff. While Botterbush's behavior may not have been very professional, these isolated incidents do not scream, "outrageous!"

## V. CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 79) and directs the Clerk to enter summary judgment in favor of Defendants. This shall constitute final disposition of the matter.

**IT IS SO ORDERED.**

Signed this 28th day of September, 2006.

<u>/s/         David  RHerndon</u>
**United States District Judge**